SHERMAN, SHREVEPORT & SOUTHERN RAILWAY COMPANY V.
A. J. BRIDGES ET AL.

Delivered April 14, 1897.

**1.  Railroad—Obstructed Crossing—Accident—Contributory Negligence.**

A woman driving a horse which she knows to be gentle is not guilty of contributory negligence in attempting to drive it over a railroad crossing while a hand car loaded with tools and overcoats, and operated by men with white and blue checked shirts, is moving from the crossing, although the horse shows some tendency to fright before she reaches such crossing.

**2.  Same—Same—Negligence.**

Section hands, in placing a hand car on which they are riding across a highway so loaded as to be liable to frighten a horse, are guilty of negligence towards one driving along the highway.

**3.  Same—Same—Section Hands—Scope of Employment.**

Section hands, in placing a hand car over a highway while waiting for the foreman, although such act was unnecessary, are acting in pursuance of their employment, so as to render the railroad company liable for an injury caused by the frightening of a horse.

APPEAL from Hopkins.  Tried below before Hon. E. W. TERHUNE.

*Craddock & Looney,* for appellant.—1.  The uncontradicted testimony showed that Mrs. Bridges was guilty of negligence which caused or contributed to the accident that caused her death, and plaintiff can not recover.  33 S. W. Rep., 834; 87 Texas, 122, 437; 86 Texas, 1; 31 S. W. Rep., 324; 35 S. W. Rep., 308.

2.  The defendant is not bound by the acts of the section hands, even if negligent, because at the time, and in the doing, and in the omission to do, as alleged, they were not engaged in any act in pursuance of their employment.  23 S. W. Rep., 41; 32 S. W. Rep., 517; 82 Texas, 519; 14 Am. and Eng. Encyc. of Law, 809; Thomp. on Neg., 885-886; Shearm. & Redf. on Neg., secs. 62-63; McKin. on Fel. Serv., sec. 2; Webb's Pollock on Torts. p. 107, and note.

*B. F. Crosby* and *E. B. Perkins,* for appellees.—1.  Mrs. Bridges,

knowing the horse to be gentle, and having driven it for years, and knowing that the employes of defendant saw her condition, had a right to drive upon the crossing, and in so doing did what any other reasonably prudent person would have done. Railway v. Spence, 32 S. W. Rep., 329; Angell on Highways, sec. 240.

2. Where the employes of a railway company place an object on or near a crossing, and the same frightens reasonably gentle teams passing by, the railway is responsible for the damage done by such frightened team, unless it appear that the placing of such object at such point was necessary to the maintenance or operation of the railway. Angell on Highways, p. 388, note 2; Id., secs. 240, 396; Hanson v. Railway, 62 N. W. Rep., 788; 2 Wood's Ry. Law, sec. 324; Wood's Law of Nuisance, p. 286.

TARLTON, Chief Justice.—The appellee, for himself and as representative of his minor son, John Bridges, recovered from the appellant a verdict and judgment in the sum of $1000, apportioned equally between the two, as damages sustained on account of the death of his wife, Mrs. Margaret Bridges, ascribed to the negligence of the defendant company.

The plaintiff and his wife lived on a farm four miles west of Sulphur Springs, in Hopkins County, Texas, within a distance of 150 or 200 yards north of the defendant's line of railway. On November 27, 1894, Mrs. Bridges went in a buggy to the town of Sulphur Springs, driving a mare eight or nine years old. The animal had been driven to a buggy by Mrs. Bridges some four or five years. She was considered perfectly gentle by all the family; and though at times she would show some fright at objects along the road, she had never attempted to run away. Mrs. Bridges was accustomed to drive her to Sulphur Springs, and she would stand unhitched.

Late in the afternoon of the day mentioned, Mrs. Bridges, returning from Sulphur Springs in her buggy, overtook her two younger children, Johnny and Kittie, as they were going home from school. She took them into the buggy, Kittie sitting beside her and Johnny in the back of the buggy behind the seat. After leaving the public or county road about half a mile from her house, Mrs. Bridges traveled north a road leading to her residence. This road crossed at right angles the defendant's railway about 150 or 200 yards south of the plaintiff's house. The road was not worked by the public, and was not a county road, but it was used by others than the plaintiff and his family. The crossing in question was put in by the defendant and kept up by it for the convenience of the plaintiff and his family. The country about the crossing is comparatively level prairie, the track being raised about the height of the ties and the rails. The water ditch on the south side of the railroad was spanned by a plank bridge six or seven feet long, and sufficiently wide for wagons to cross.

On the morning of the day in question, M. Flanagan, section foreman in the service of the defendant, in going to his work stopped at the plaintiff's house and requested the latter to assess the damages for a grass-burn occasioned by the defendant's engines on the land of an adjoining farm. Flanagan was to stop when returning from his day's work and see the plaintiff relative to the matter. On returning that evening Flanagan,. some distance west of the crossing, left the hand car, with five or six negro section hands on it. The hand car was stopped some distance west of the crossing. The foreman walked diagonally across the prairie to the plaintiff's house. The plaintiff met him at the front fence, on which they sat down and engaged in conversation.

The negro section hands, after their foreman left them, moved the car east on the railroad and stopped on the crossing, waiting for Flanagan. The hands discovered the approach of Mrs. Bridges in the buggy, and moved the hand car back west from the crossing. Mrs. Bridges drove her horse across, and about the time the buggy cleared the track the horse broke into a run, and continued to run until the buggy struck a tree near the house. Mrs. Bridges and her little daughter were both thrown out and killed. The hand car was loaded with tools, buckets, pails, coats, etc. The hands were dressed in white and blue checked shirts and jumpers, and the car had handles to work it that moved up and down. While the car was stationary, the hands were standing around it.

There was testimony to the effect that the distance the hands moved the hand car west from the crossing was about twelve or thirteen steps;. that the mare began to shy while the car was on the crossing; that she shied after the car was moved back, and a third time when the bridge was reached; that the buggy was about thirty or forty feet from the track when the mare first began to shy; and that Mrs. Bridges, who was a good driver, urged the animal forward when she first showed signs of fright,. slapping her with the lines. There was also evidence to the effect that the employes could have moved the car to an accessible point farther east,. when it would not have been visible until the crossing was reached, and then to a person looking down the track.

The verdict of the jury, under the charge of the court, indicates that they found that the servants of the defendant, acting within the scope of their employment, were guilty of negligence in the operation of the hand car, that this negligence was the proximate cause of the injury, and that Mrs. Bridges was not guilty of contributory negligence on the occasion in question; and we find in accordance with the verdict.

*Opinion.*—The instructions of the court, including the special charges. granted at the request of the defendant, were extremely liberal to the appellant. Indeed, in some respects they verge upon the argumentative. Hence no complaint is urged against the action of the court in its charges to the jury, but it is insisted (1) that the evidence requires a finding that the negligence of Mrs. Bridges contributed to the sad fate which over-

took her; and (2) that the evidence excludes any inference of negligence on the part of the defendant.

We overrule both these contentions.

1. At the time that Mrs. Bridges urged her horse forward over the crossing, the hand car was not upon it, and while the animal had manifested some tendency to fright, the lady could well have concluded that she could manage it, as she had always previously done. She knew the gentle disposition of the mare—that the animal had always proved tractable; and the inference would be reasonable that in all probability she could safely cross the track. The jury were justified in inferring that a person of ordinary prudence would have acted similarly under the same circumstances.

2. The conduct of the employes of the appellant in placing the hand car upon the crossing would justify on the part of the jury an inference of negligence. By this means the road was unnecessarily obstructed. The use of the track by the appellant in no way required that the hand car should be thus operated. Its tendency was to frighten the horse of one traveling the road; and as stated in Myers v. Railway, 87 North Carolina, 350, "That one may be responsible for injuries resulting from negligently and unnecessarily putting into a highway objects likely to frighten horses of ordinary gentleness, is shown by the authorities." And if the presence of the hand car on the road tended in this instance to frighten this animal of ordinary gentleness, it is a matter of easy inference that the conduct of the employes in moving the hand car westward from the crossing would not tend to allay disquietude on the part of the horse. The movement up and down of the handles of the hand car by the operatives, dressed in white and blue checked shirts and jumpers, the car laden with picks, spades, shovels, overcoats, and tools, would probably tend to increase the fright of the horse.

We can not concur with the appellant in its proposition that the section hands in operating this hand car should not be regarded as engaged in any act in pursuance of their employment.

The following authorities cited by the appellees sustain, as we think, the views above expressed: Patt. Ry. Acc. Law, sec, 148, p. 151; Myers v. Railway, 87 N. C., 345; Bussian v. Railway, 56 Wis., 325.

The judgment is affirmed.

*Affirmed.*